Case number 156142, Odell Brackens Jr. as a personal representative of the estate of Leon Brackens v. Loisville Jefferson County Metro Government et al. and Officer Brian Gillick. Argument not to exceed 15 minutes for the plaintiff and 15 minutes to be shared by defendants. Mr. Adams, you may proceed for the appellant. May it please the court, counsel, I am Gary Adams, attorney for the estate of Leon Brackens. On April 21, 2011, Leon Brackens was an unwilling participant in a pursuit that spanned two states. Rhonda Sullivan was the driver of the vehicle who fled police in Indiana and took them on a chase into Kentucky because she had outstanding warrants. Leon Brackens, the passenger, called the police many times during the incident and pleaded for help. He was heard on the dispatch tape crying for help and begging someone to save his life. He said, I can't get out. She's going to kill me. Please, what do I do? I don't want to die. I have no choice. I can't get out and she won't stop. Brackens relayed to dispatch that there was nothing he could do as he was not the one driving. Nothing I can do. I'm in here. I'm scared for my life. Never done nothing. Never been in a situation like this. You can also hear Brackens pleading with Sullivan in the background to please stop the vehicle. The dispatchers that he was relaying this information to knew he was just a passenger. Ms. Sullivan eventually stopped the vehicle on the Kentucky side of the river. The end of the pursuit has been described as rather uneventful. In fact, Officer Glass' testimony, as outlined in our brief, described the end of the pursuit as low key, not at high speed, not erratic, minimal traffic, just came to a stop, no real drama. For it to be a pursuit, probably could not have been lower. Similarly, Officer Ashenfelter agreed it was rather low. Counsel, this is Judge Boggs. You're not contesting, are you, that the earlier part of the chase was quite excessive and dramatic, are you? I am not. I am not. To sort of cut to the chase, at least, and this is my view, I don't know about my colleagues, obviously Mr. Brackens was badly used in the whole situation. And it would seem that the dispatchers are primarily at fault. I don't know whether you sued them or they settled out at some point. But can you really focus on what the officers did after the stop, given the information that they had, even taken in the best view to yourself? Because I think we've got the big picture, but we're not suing the dispatchers here. Apparently you did settle, according to the brief, with some of the Jeffersonville, Indiana officers, is that correct? That is correct, Your Honor. We never brought a claim against dispatchers, and nor do I think that there exists a cause of action against them. If you look at the Smoke v. Hall case, which we cited in our brief, it actually addresses the issue on whether or not dispatchers can be negligent if they provide incorrect information. In this case, I think that there is a disputed issue of material fact, exactly what officers knew from that dispatch. If you look at the statements they gave PSU and that they gave in depositions, their responses are really all over the board as far as what they knew and what they suspected any involvement of Mr. Brackens was. What would you point to, this is Judge Boggs again, as the best evidence of some type of knowledge that things were not as it seems to be from the dispatch state? If you look at our brief, Judge, Officer Madison didn't know if Brackens was a victim. Officer Gillock, who's the one that went hands-on immediately for LMPD, all he knew is that Indiana was chasing a van. Officer Stephan said he had no idea what the chase was over. Officer Meredith gave multiple different statements. In his first interview, he stated he thought a lady called dispatch and she was armed. Second interview, he said someone in the vehicle advised that they might possibly shoot someone if police did not stop chasing, and there's probably a weapon in the vehicle. Which officer were you quoting just then? That was Officer Meredith. Meredith, thank you. He gave inconsistent statements. Obviously, in hindsight, after looking at dispatch records, it appears to me, and we would argue in front of a jury, that he embellished the information that he had. Now, as far as what the officers witnessed at the stop, you've got a situation where Rhonda Sullivan, who is the perpetrator, she is the one that's wanted on warrants. She is the one that started the chase, and you can see on the video that she gets out of the vehicle. She's handcuffed really rather easily by two officers, and she's walked off of the video screen and taken and sat in a car. And that's what a reasonable officer... This is Judge Boggs. She immediately gets down on the ground when they tell her to. Isn't that correct? Well, we know that she immediately gets down on the ground. I guess what we don't know is if they told her to or not. We could definitely see she exits the vehicle. She gets on the ground. And I don't know if there's a dispute or if that was even addressed. We do know that, obviously, a reasonable officer in the situation handcuffed her, walks her away. They put her in a vehicle for transport. At the same time... While we're on the subject of Sullivan, because of the state that the person you represent is deceased, we don't have the situation really where we're getting his version of events. Did Sullivan have anything material to add to what happened to Bracken? As far as I know, Your Honor, I don't think Rhonda Sullivan was deposed in the case. As far as Mr. Bracken's, we did make a video of him before he was deceased. We notified counsel before we took the video. I believe it was before the litigation was filed. So we do have him on record describing exactly what happened to him. We did not introduce it at the summary judgment stage, however. So this is Judge Moore. So that video is not in evidence. Is that correct? That is correct. So getting back to Mr. Bracken's, Mr. Bracken's was told to put his hands up. There is no dispute that he was compliant with that request. He put his hands up. You're looking at the vehicle. You could then see two officers. I'm sorry. Did somebody have a question? Again, when you say his hands up, as I saw it, he puts the hands on the dashboard. Is that correct? My recollection was that he had his hands in sight. And it's been a while since I took Officer Shiller's deposition. He was the Jefferson Police Department officer, the first one to get to Mr. Bracken's. Okay, thank you. And one of the issues he had, because he ordered Mr. Bracken's hands up where he could see them, when initially trying to get him out of the car, he noticed that his seatbelt was still on him. So they had to take his seatbelt off while Mr. Bracken's hands were up. And then you saw on the video Officer Gillock of the LMPD and Officer Shiller of the Jeffersonville Police Department rip him out of the car, throw him to the ground within seconds. You see at least two other officers jump on top of him. You've got conflicting statements as to who those other officers were. At some point in time early on, Henderson gave a statement to BSU that he was one of those officers. Officer Meredith was interviewed three times and told three different stories. At first he denied involvement at all. In his second interview he stated he approached the vehicle with a flashlight and looked for other occupants. By the third interview he admitted to kneeling down to, quote, assist in handcuffing Bracken's and could have leaned on him. And obviously that is the reason for our argument that he is likely the individual that was kneeling on Bracken's head. This is Judge Moore. We have a case, Dunn v. Metatol. And I'm curious how you think this case differs from the Dunn case. Hold on one second. My recollection of the Dunn v. Metatol case is that there were factual differences. That in the Dunn v. Metatol case, Mr. Dunn was the actual driver and not the passenger. And hold on one second. Yes. But does that not – isn't the issue whether there's excessive force used here in extracting Mr. Bracken's from the car? And why would – whether he was the driver or not make a difference? Because the information that they had about him – I mean, as far as whether or not a use of force is reasonable, you have to look at the totality of circumstances that the officers knew at the time and use the reasonable officer objective standard. Bracken's was not a threat and there was no information that he was a threat. Bracken's did not resist arrest.  To me, this case is a lot more similar to the Brown v. Lewis case that Judge Moore that you were on, where the information that was provided to the officers was questionable. And once they could actually see Ms. Brown, they knew she was a female. She was not the suspicious caller. They knew she was a female. They heard her scream. Then they knew that she wasn't the male they called. There was no reasonable, articulable suspicion to treat her in the way that they did by grabbing her out of the car, throwing her on the ground, and handcuffing her. I see this case as being more similar to that and the smoke case. Counsel, this is Jeff Boggs, but from the dispatch, isn't the dispatch saying, not truthfully, but saying that it's the male who's on the phone saying these pretty aggressive things and that the female in the vehicle is not involved? Again, it's not true. But is there any information that would be any contrary to that in terms of what the officers had? Well, we would have to establish that each one of these officers heard that dispatch, and that was their belief. And their statements and depositions in the PSU reports don't indicate that that is clear. There are statements in the dispatch saying she doesn't want to go to jail. I'm looking at the dispatch report now. It was attached to our response to summary judgment. Okay, we can look at that, Counsel. Your time has expired, but my colleagues might have questions. Well, I just had one, Judge Guy. Despite the perhaps dispute over what information from the dispatch the officers had, did any officer testify, or do you have any reason to be able to prove, that the officers involved knew that Brackens was, in effect, a hostage in the car and had no role other than that? It doesn't appear that any officer had that information. It also doesn't appear that any officer perceived him as a threat. All of the statements from the officers were that he looked like a scared man. He looked like an elderly man. I could tell he was handicapped. And so, once again, whether he was a hostage or not, the officers have to take him as they find him. And he's sitting compliant in the passenger seat of a car with his hands up. So which officer said that looking at Mr. Brackens in the car, he could see he was incapacitated or not well or whatever? Well, Schiller was the one that first saw him in the car, and he testified he found a scared passenger who was compliant when asked to show his hands. He was Defendant Hamlin, who was one of the supervisors on the scene, stated he looked like he was elderly. He looked much older than he actually was. He looked scared. Okay, thank you, Counsel. Any other questions from my colleagues? If not, you'll have your three minutes for rebuttal. Thank you, Your Honor. And we're going to hear from Mr. Hart now for half the time. Yes, Your Honor. May it please the Court, Counsel, my name is Nick Hart. I represent Officer Brian Gillick in this matter. And addressing exactly what the Court picked up on of what the dispatch was communicating to the officers is important in determining the reasonableness of Officer Gillick's actions, specifically that the analysis is from the perspective of the reasonable officer on the scene and not 20-20 hindsight. It's what they knew and what Officer Gillick knew at that time of removing Mr. Brackens from the vehicle. And his testimony is not what appellant has suggested of some knowledge that there was a van chase. He testified that he was aware that it was communicated to him that there were felonies for both individuals, that they were armed and dangerous, and that there was a potential of suicide by cops from the vehicle. So it wasn't that, oh, when he got to the car, like Anne Brown, they could have realized that it was a man and not a woman. Officer Gillick saw Mr. Brackens as a threat when he approached that vehicle and had to neutralize the scene, as he testified, by removing him and getting into handcuffs to assess the situation further. And so that was what Officer Gillick was viewing from his perspective at that time, as what was told to him by dispatch. And that is exactly what the lower court addressed, that dispatch warrants use caution, that they're saying they won't be taken out. The subject has warrants for escape second. He is suicidal and homicidal. Counsel, this is Judge Boggs. I see those statements from dispatch, and especially the all units use extreme caution. That's very strong. Is there evidence that Gillick himself heard that dispatch or that that was relayed to him from someone else who affirmatively heard the dispatch? There is, and Officer Gillick has been deposed, and he testifies that he heard the radio and that when he was approaching the vehicle, he was aware or suspected that Mr. Brackens was, quote, armed and dangerous, that he had felonies, and that they would attempt suicide by cop. That was the level of concern that he needed to address when he approached that vehicle. And further, when he approached the vehicle, he assisted in the removal of the seatbelt. Officer Schiller pulled Mr. Brackens from the vehicle, and once on the ground Officer Gillick did not even handcuff the individual. He handed his handcuffs to another officer. That is the testimony in the record. And that he was up around Officer Mr. Brackens' head at the time, and so there's no suggestion that he would have caused any of the injuries that are alleged anyway in his actions, reasonable or not, but they were reasonable. And furthermore, the testimony in the record is that the injuries to Mr. Brackens were caused by his sickle cell anemia, not by any actions of the police, and there's no evidence to the contrary to that. In addition, Counsel, this is Judge Boggs. When you say they were caused by his sickle cell anemia, his bones didn't break until this interchange. I mean, he may have been an eggshell-legged plaintiff, but surely the officers had something to do with the fact that these injuries occurred. Well, Your Honor, it's the fact that they had no reason to believe that he was an eggshell plaintiff. He did not mention, and when he was being removed from the vehicle, he did not say anything, and there's no evidence in the record of Mr. Brackens saying, hey, I can't move, I'm disabled, I've got a condition, my legs hurt, I can't. In the record, the undisputed evidence is that the first time that Officer Gillick was aware of any issue was when they attempted to stand him up to the vehicle and they noticed an issue with his leg. So, no, I agree, yes, the injury occurred during the incident, but it was not due to any excessive force because they had no reason to believe that he was an eggshell plaintiff or had any latent injuries or conditions that they needed to be aware of. All they knew is that there's an individual that won't exit the vehicle after being requested to do so. He did have his hands up, but he refused to exit the vehicle, and then they removed him from the vehicle and placed him on the ground, and then the rest is on video. In Plaintiff's Appellant's Reply Brief, he suggests that the officers may have been justified in simply pulling Brackens out of the vehicle, and the rest is just what happened on the ground. And so, to the extent that Appellant's only argument against Officer Gillick is the removal of Brackens from the vehicle, they have, in effect, suggested that that could have been determined to be reasonable under the scenario, the situation. And so Officer Gillick did not use excessive force, properly removed Mr. Brackens from the vehicle, and once on the ground, did not have any physical contact with him other than being toward his head. He handed the handcuffs to another officer, and that's all on the video. What exactly is your position as to what Gillick did? Because you said earlier that the only thing he did was to assist in the removal of the seatbelt, and that it was Schiller who removed Mr. Brackens. Did Gillick admit in any form of deposition or otherwise that he had participated in removing Mr. Brackens? His testimony is clear that he assisted in removing the seatbelt. The testimony is less clear on bringing him to the ground. I think he says that he assisted in lowering Mr. Brackens to the ground in his testimony, but following that, he wasn't the one handcuffing, he handed his handcuffs to someone else. So his involvement would be unbuckling the seatbelt and assisting to the ground. And you said he was at the head as a way of saying he couldn't have broken the leg, but is it clear that he wasn't the one who put his knee on Mr. Brackens' head? There's nothing in the record that would suggest that, and his testimony would be inconsistent with that he had his knee on his head, and I think that's inconsistent with what's actually shown on the video, which he was shown. His testimony was that I was at his head when he was lowered to the ground, and that he was around his head, but nothing about any knees on the head. That was his general location because he was speaking with Mr. Brackens at that time when they attempted to lift him up. That's when they first knew of any issue with his legs. But prior to that, there was no reason to believe that Mr. Brackens had any deficiencies with his health or otherwise. And also, that was the first time with Judge Guy's question about whether we knew he was a hostage, and I think the appellant agreed that there was no knowledge of any of the 911 calls or that he was a hostage or anything for that matter until afterwards when Officer Gillick was having conversations with Mr. Brackens and was informed that after everything had settled down at that point. Okay, your time's about expired. Do either of my colleagues have any further questions? No. Thank you, Mr. Hart. Thank you. We'll hear from Ms. Schweikert. You may proceed. Stephanie, do we know if we have Ms. Schweikert? Ms. Schweikert? Sorry. I'm going to pull her line. Give me one moment. Oh, no. We'll find out how much she missed, Judge Boggs, because we do have the recording at least. Unless she's just on mute and forgot she has it on mute. Okay, do you want to Ms. Schweikert? Yes, I'm sorry. Ms. Schweikert, did you miss any of the argument? No, I was able to hear all the arguments. I'm not sure what happened. I apologize. Okay, good. Okay, you may proceed. Thank you. May it please the Court, as has been pointed out, the information that was known to the officers was the information that was being relayed by dispatch. And what was happening is Mr. Brackens was indeed calling 911, but as the Court knows there were two different agencies involved and the officers were being provided information by two different dispatch agencies. So LMPD was receiving information from their dispatch, whereas Jeffersonville was receiving information from their dispatch. And the information that was known to the officers at the time was both individuals in that car were a threat, as is evidenced by the fact when they stopped the vehicle and they approached, the officers had their weapons drawn because they were approaching this as a high-risk felony stop. And as is clear, Ms. Sullivan got out of the van. She followed the commands, and I believe Officer Schiller did testify in his deposition that he had ordered her out of the van. She got out. She complied. She got on the ground. During this entire time, officers are on the passenger side ordering Mr. Brackens out of the car, and he is not complying. Officer Schiller, after securing Ms. Sullivan, comes around the van, and as can be clearly seen on the video, is making sure other officers have him covered as they do. He then goes up and removes Mr. Brackens from the car. Now he was having trouble getting him out. He realized he was still seatbelted in. Officer Gillick approached and helped, and then they get him out of the car and get him on the ground. It is probably at that time that unfortunately Mr. Brackens' leg was broken, but just as in Griffin v. Hardrick, there was no indication whatsoever that the officers used inappropriate force or that they intended to use force that would in fact break his leg. It was unknown to them that he had this disability, and it was because of his disability, his sickle cell anemia, and the debilitating disease that he suffered from the fractures. What about the testimony that he looked scared and that he looked elderly and so forth while he was sitting in the car? Well, actually I don't think there is testimony that he appeared that way while he was in the car. I think when you review the statements that you'll see, that that testimony comes after he's out of the vehicle, and once he's seated on the ground, once they've realized they can't stand him up, they sit him back down. As you watch in the video, this all occurs very quickly, and particularly the testimony from, I believe it was Sergeant Hamlin, who gave his deposition, indicated it was after, because he came up on the scene when he was seated on the ground, and that's when he said he appeared to be elderly or older than he was, as I recall the testimony. So I think when you review that, you'll see that there wasn't anyone who said he appeared to be scared and disabled while he was still in that van. Everyone still perceived him to be a threat at that time, and so getting him out of the car, getting him handcuffed, they needed to conduct a pat-down to make sure he had no weapon, because, again, the information provided to all of the officers at that time was these subjects were armed, intended to do suicide by cough, or intended to run police officers over if they were going to be taken in. So when Mr. Brackens makes the 911 calls, to which jurisdiction do they go? I think there's some confusion about that. Initially, I believe they were going to the Jeffersonville, and at some point I do think he's calling the Metro, Louisville Metro, 911. But clearly the information that is being provided to 911, there's actually two different tapes, which you can hear. There's a 911 tape where you have Mr. Brackens talking directly to 911. There's a second tape, which is the dispatch tape, and that's the information that is being relayed to the officers. And I don't think there's any question but that the information relayed to the officers is not any information regarding Mr. Brackens being scared and Mr. Brackens being the victim in this. All information relayed to the officers. And again, for reasons we don't know, this discovery was never taken. These depositions were never taken of the dispatch, so we don't know why dispatch got it wrong. And unfortunately they did get it wrong. But it's clear the information that was relayed to the officers as they're on the scene was these people are a threat. And whose dispatch was relaying the information? There were two different dispatches. There was dispatch coming from LMPD, Louisville Metro Police. There was also dispatch coming from the Jeffersonville Police. Jeffersonville Police were receiving information from their dispatch. Louisville Metro was receiving information from its dispatch. And both of them were relaying incorrect information? Is that what your position is? Yes. Some of it was incorrect even to JPD, Jeffersonville Police. I'm not sure what all was related to Jeffersonville, but I do know one of the items related to Jeffersonville, according to Officer Schiller in his deposition, was that there was possibly a suicidal subject with a firearm in the car. And that was specifically to the Jeffersonville Police Department. And so, yes, there was, for whatever reason, differing information relayed to each agency. But in the course of relaying that, each agency was also provided with information that there was a gun in the car, there was a suicidal subject in the car, and at least LMPD was being also told that they were homicidal. Counsel, this is Judge Boggs. Is there any particular difference in officer liability as to Gillick, as to why he's being represented separately? Your Honor, just originally when the lawsuit was filed, there was a professional standards unit investigation ongoing, and it was just unclear at that time what role different people played. So as a precaution, we knew that Officer Gillick had assisted in removing Mr. Brackens from the car, so he was provided separate counsel and we just never brought him back in house. So Schiller is from the Indiana police, right? He's not one of yours? That is correct. And then those were settled out. Let me just ask you one thing about the amount of compliance. If you tell a person to show his hands, which Mr. Brackens apparently did, and he's also belted in, how can he unbelt himself and comply with getting out of the car? Well, he wasn't asked to show his hands until after Officer Schiller opened the door. They had initially been informing him to get out of the car, and it's when he refused to get out of the car that Officer Schiller had to physically approach the car and open that door. And you'll notice on the video, he is looking over his shoulder and he's making sure that he has officers covering him in case Mr. Brackens assaults him. So when he opens the door, he does have him show his hands, and that's when he attempts to pull him out of the car and realizes he's belted in, so he reaches in to unbuckle him. So prior to opening the door, when he is being commanded to get out of the car, they anticipated him to unbuckle his own seatbelt, open that door and get out. Okay. Do my colleagues have any other questions? Your time is about up. If not, thank you. Thank you, Mr. Adams. You'll have three minutes for rebuttal. Thank you, Judge Boggs. It seems that the focus of this argument is what each individual officer knew as they approached that vehicle, and also should take into consideration what the officers witnessed as the events unfolded. As far as the testimony and the statements that these officers have given, and the like most favorable to the plaintiff, it is not clear what each officer knew. Whether or not dispatch provided information that was incorrect, these officers had to hear it and they had to take actions because of it. As we pointed out in our brief, Madison didn't know if Brackens was a victim. Stephan had no idea what the chase was over. Meredith, in this first interview, stated he thought a lady called dispatch and a lady was armed. He is the gentleman that is on the video near the head of Mr. Brackens that has at least identified in one of his statements, they've been inconsistent, but that he did assist and he was near the head. There was even a statement from another officer, who is not a defendant in this case, that he refused to get involved in the pursuit altogether because he could not get a straight answer if they were chasing a felony or not. It's not in this case, but under the LMPD's pursuit policy, and it's pursuit 12, they can get involved if somebody is fleeing and they are a known felon. Counsel, hold on a second. Counsel, this is Judge Boggs. I just wanted to rehearse what you said on your first go-round as to who it is that you believe or state put his knee on Mr. Brackens' head. Meredith. Oh, is that not clear? Meredith. Okay, thank you. Hernandez was an individual that, at the initial stages, said that he was involved and he helped cuff Mr. Brackens, and then as time went on, he changed his story. His current story and what he's telling the court is that he wasn't there at all, and we have inconsistent statements from him as well. But as these officers approach, we've got two departments. We've got 19 officers, and we have a frail elderly man sitting in a car with his hands up. That is what they encountered. He had committed no crimes to any severity of the crime that he had committed. They knew nothing about him committing a crime. There was no immediate threat to the safety of the officers or others as someone sits in a car with their hands up, being compliant with that lawful order to put your hands up, and he wasn't actively resisting or he wasn't attempting to evade arrest through flight. There is no evidence that any of those things are present, and just like in the smoke case that we cited, it's unreasonable when applied to an individual, when this force is being applied to an individual who's not resisting arrest and is generally compliant. And at the time, it's also undisputed that he wasn't told that he was under arrest. Are there any other questions of the court? No, not from Judge Boggs. Your time's about up. Nothing from my colleagues. We will thank you for your arguments, and the case will be submitted.